IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHYANNE AUKAMP-CORCORAN,<br><br>Plaintiff,<br><br>v.<br><br>LANCASTER GENERAL HOSPITAL t/a PENN MEDICINE LANCASTER GENERAL HEALTH,<br><br>Defendant. | CIVIL ACTION<br>NO. 19-5734 |

**MEMORANDUM OPINION**

**Schmehl, J.**   **/s/JLS**                                                                                   **February 17, 2022**

**I.      INTRODUCTION**

Plaintiff, Shyanne Aukamp-Corcoran ("Plaintiff") brings this suit against her former employer, Lancaster General Hospital t/a Penn Medicine Lancaster General Health ("Defendant"). Plaintiff's Amended Complaint contains a cause of action for Defendant's alleged failure to accommodate her religious beliefs under Title VII by refusing to exempt her from Defendant's influenza vaccination requirement. Before the Court is the Motion for Summary Judgment of Defendant and the parties' Joint Statement of Material Facts. The motion has been responded to and oral argument has been held. For the reasons discussed more fully below, Defendant's Motion for Summary Judgment will be granted, and this matter will be dismissed.

**II.     LEGAL STANDARD**

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. Proc. 56(c).  "A motion for summary judgment will not be defeated by 'the mere existence' of

some disputed facts but will be denied when there is a genuine issue of material fact." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Auth. of N.Y. and N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) (*citing Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

### III.   FACTUAL BACKGROUND

Defendant Lancaster General is a community-based, comprehensive not-for-profit health system located in Lancaster County, Pennsylvania. Joint Statement of Material Facts ("JSOF") at ¶ 1. Plaintiff, Shyanne Aukamp-Corcoran, worked for Lancaster General from 2001 until early 2018. *Id.* at ¶ 2. In 2015, Plaintiff became a licensed practical nurse working at Lancaster General's outpatient facility at Willow Lakes, where her primary duties involved providing direct care to geriatric patients. *Id.* at ¶¶ 3, 4.

On average, influenza causes approximately 200,000 hospitalizations each year, and geriatric patients comprise approximately 63% of patients requiring hospitalization for influenza-related complications. Geriatric patients account for over 90% of influenza-related death. JSOF at ¶¶ 5-7. Vaccination is the most effective strategy to protect healthcare workers from contracting influenza and transmitting it to their patients and use of a surgical mask is less effective than vaccination at curbing the spread of influenza. *Id.* at ¶¶ 9-10. The U.S. Center for Disease Control and Prevention ("CDC") recommends annual flu vaccination for everyone in the United States who is at least six months old. *Id.* at ¶ 11. The CDC has concluded that it is "especially important" for healthcare workers "to get vaccinated [for influenza] annually." *Id.* at ¶ 15.

The Joint Commission on Accredited Healthcare Organizations ("JCAHO") is the organization that establishes accreditation standards for hospitals and other healthcare facilities in the United States. *Id.* at ¶ 16. JCAHO requires that healthcare facilities must adopt disease control plans to maintain accreditation, and those plans must include steps designed to ensure that at least 90% of an accredited facility's licensed clinical staff undergo annual vaccination for seasonal influenza. *Id.* at ¶ 17.

In 2012, Defendant adopted a system-wide policy requiring influenza vaccination of all employees, unless a specific exemption was requested and approved. *Id.* at ¶ 18. Defendant's position is that any exemption to its mandatory influenza policy weakens the efficacy of the organization's ability to protect patients from a potentially dangerous communicable disease. *Id.* at ¶ 20. Defendant has granted 81 medical-based exemptions to its mandatory influenza policy, and since 2012, it has granted 24 religious-based requests for exemptions to its mandatory influenza policy. *Id.* at ¶¶ 21-22.

Plaintiff underwent flu vaccinations in 2012, 2013, 2014, 2015, and 2016 and did not request a religious exemption from Defendant's mandatory influenza vaccination policy in those years. JSOF at ¶¶ 23-24. In April of 2017, Plaintiff testified that she began "researching vaccinations in-depth from a medical perspective." *Id.* at ¶ 25. She then became pregnant during the Fall of 2017 and worried that undergoing influenza vaccination would increase her risk of miscarriage. *Id.* at ¶ 26. Sometime after October 1 and before November 2, 2017, Plaintiff asked her midwife to certify her for a medical exemption from Defendant's mandatory influenza vaccination policy. *Id.* at ¶ 27. The treating midwife at the practice would not certify Plaintiff for a medical exemption. *Id.* at ¶ 28.

On November 2, 2017, Plaintiff informed Defendant that she was in the process of requesting that her treating obstetric practice provide her with a medical exemption from the mandatory influenza vaccination policy. *Id.* at ¶ 29. On November 15, 2017, Plaintiff learned that her treating physician refused to certify her for a medical exemption from Defendant's influenza vaccination policy. *Id.* at ¶ 30.

On October 31, 2017, Plaintiff made a post to the Vaccine Re-education Discussion Forum, a secular Facebook group. *Id.* at ¶¶ 33-34. In that post, she asked: "Any recommendation on how to prepare for the flu shot and how to detox while pregnant?" *Id.* at Ex. 11, ¶ 34. Members of the Vaccine Re-education Group expressed outrage with Plaintiff's situation and encouraged her to avoid vaccination at all costs. *Id.* Several members of the group instructed Plaintiff to seek a religious-based exemption to the flu vaccine requirement. One poster stated, "Get a religious exemption in place, to back up that you do not agree with putting foreign DNA and toxins in your body . . . and that it

4

goes against your beliefs." Another poster said, "What about a religious exemption[?] My work HAD to accept it." Yet another member of the group suggested, "Get a religious exemption. It's so very easy. All I had to do was say I do not vaccinate for religious reasons. Depending on which state you are in they can't question you about your religion." JSOF, Ex. 11.

On November 9, 2017, Plaintiff submitted a letter to Defendant requesting a religious exemption from the mandatory influenza vaccination policy. *Id.* at ¶ 35. The Honorable Edward Cahn, retired chief judge of the United States District Court for the Eastern District of Pennsylvania, served as a third-party reviewer for religious exemption requests by Defendant's employees. *Id.* at ¶ 41. On November 27, 2017, Judge Cahn interviewed Plaintiff by telephone to discuss her religious exemption request. *Id.* at ¶ 41. During that call, Judge Cahn questioned Plaintiff about her claim that her religious beliefs required her to forgo vaccination. *Id.* at ¶ 42. When he spoke with Plaintiff on November 27, 2017, Judge Cahn was in possession of her earlier post to the Vaccine Re-education Group, along with an excerpt of some of the forum members' responses to Plaintiff's post. *Id.* at ¶ 43. Judge Cahn determined that Plaintiff had a medical objection to the influenza vaccination requirement, but not a sincerely-held religious objection to vaccination. *Id.* at ¶ 44. Accordingly, on November 30, 2017, Judge Cahn authored a report recommending that Defendant deny Plaintiff's religious exemption request. *Id.* at ¶ 45. As part of his report, Judge Cahn recommended that Defendant permit Plaintiff to be vaccinated by December 15, 2017, by which point she would have completed her first trimester of her pregnancy. *Id.* at ¶ 46.

Plaintiff did not undergo influenza vaccination by December 15, 2017. JSOF at ¶ 47. On December 22, 2017, Defendant informed Plaintiff that her religious exemption request had been denied and that she would have to undergo influenza vaccination no later December 29, 2017. *Id.* at ¶ 48. This marked the first time in the existence of Defendant's mandatory vaccination policy that it had denied an employee's religious-based exemption request. *Id.* at ¶ 49. Plaintiff subsequently refused to undergo the influenza vaccination and Defendant terminated Plaintiff's employment effective January 5, 2018. *Id.* at ¶¶ 50, 52. Her refusal to comply with the vaccination policy is the sole reason why her employment was terminated. *Id.* at ¶ 53.

## IV. DISCUSSION

Defendant argues that the claims contained in Plaintiff's Amended Complaint for religious discrimination should be dismissed. For the reasons set forth below, Defendant's motion for summary judgment will be granted and Plaintiff's Amended Complaint will be dismissed.

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Under Title VII, employees may assert two different theories of religious discrimination: failure to accommodate and disparate treatment. *E.E.O.C. v. Aldi, Inc.*, 2008 WL 859249, at *5 (W.D. Pa. Mar. 28, 2008); *citing Abramson v. William Paterson College of New Jersey,* 260 F.3d 265, 281 (3d Cir. 2001). In the instant matter, Plaintiff presents a claim

for an alleged failure to accommodate based upon Defendant's refusal to exempt her from its influenza vaccination requirement.

### A. **FAILURE TO ACCOMMODATE**

Title VII failure to accommodate claims are governed by a burden-shifting framework. *E.E.O.C. v. GEO Grp., Inc.*, 616 F.3d 265, 271 (3d Cir. 2010). Under this framework, the plaintiff has the initial burden of proving a *prima facie* case. *Id.* If she does so, the burden then shifts to the employer to show either: (1) it made a good-faith effort to reasonably accommodate the plaintiff's religious belief, or (2) that such an accommodation would cause an undue hardship to the employer.

To establish a *prima facie* case of religious discrimination, the employee must show: (1) she holds a sincere religious belief that conflicts with a job requirement; (2) she informed her employer of the conflict; and (3) she was disciplined for failing to comply with the conflicting requirement. *GEO Grp,* 616 F.3d at 271, *citing Webb v. City of Phila*, 562 F.3d 256, 259 (3d Cir. 2009). The burden then shifts to the employer to show either (1) it made a good-faith effort to reasonably accommodate the religious belief, or (2) such an accommodation would work an undue hardship upon the employer and its business. *Id.* (citations omitted).

In the instant matter, Defendant first argues that Plaintiff cannot establish a *prima facie* case because she cannot demonstrate that she holds a sincere religious objection to the influenza vaccine. Defendant then argues that even if Plaintiff could establish a sincere religious objection to the vaccine, it is still entitled to an entry of summary judgment because Plaintiff's requested accommodation would undermine Defendant's safety efforts, which would result in an undue burden to Defendant.

1.  **Sincere Religious Objection**

Plaintiff bears the burden of demonstrating that she holds a sincere religious objection to influenza vaccination. *See Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 319 (3d Cir. 2008); *see also Bushouse v. Local Union 2209, UAW,* 164 F. Supp.2d 1066, 1076 (N.D. Ind. 2001). "If the religious beliefs that apparently prompted a request are not sincerely held, there has been no showing of a religious observance or practice that conflicts with an employer requirement." *Sidelinger v. Harbor Creek Sch. Dist.*, 2006 WL 3455073 at *11 (W.D. Pa. Nov. 29, 2006) (internal quotation omitted); *see also Protos v. Volkswagen of America, Inc.*, 797 F.2d 129, 137 (3d Cir. 1986) ("While courts may not inquire into verity of a religious belief, 'it is entirely appropriate, indeed necessary, for a court to engage in analysis of the sincerity of someone's religious beliefs in . . . the Title VII context.'" (*quoting Phillbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481 (2d Cir. 1985) aff'd by 479 U.S. 60 (1986)).

Further, "anti-vaccination beliefs" themselves "are not religious" and, therefore, are not entitled to accommodation under Title VII. *Fallon v. Mercy Catholic Med. Ctr. of Southeastern Pennsylvania*, 877 F.3d 487, 492 (3d Cir. 2017) (affirming dismissal of claim based on medical center's refusal to accommodate employee's objection to vaccination). However, anti-vaccination beliefs that are "part of a broader religious faith" might "in some circumstances" constitute religious beliefs entitled to protection. *Id.*

In the instant matter, Plaintiff claims that she harbors a Christianity-based objection to vaccination, believing that her religion "requires her to keep her body pure from everything that contaminates the body and spirit." Amended Compl., ¶¶ 18, 21. However, Defendant argues that "the circumstances surrounding her request very strongly suggest[]

that she was attempting to disguise her medical objection to the flu vaccine as a religious-based objection." Dkt No. 25, p. 17. The EEOC has indicated that an employer may deny a religious accommodation request if the employer "has reason to believe the accommodation is not sought for religious reasons." Dkt No. 25, Ex. 22, p. 13.

It is undeniable that both the circumstances and timing surrounding Plaintiff's request for a religious-based exemption to Defendant's vaccine requirement are suspicious. In terms of the timing, Plaintiff admitted that she only requested her religious-based exemption after she had researched vaccines "from a medical perspective." She did not request a religious exemption until after she unsuccessfully petitioned her midwife and her medical doctor for a medical-based exemption from the vaccination requirement, and she admitted that she harbored a medical objection to vaccination at the time that her religious exemption request was submitted. JSOF at ¶ 37. The EEOC has stated that employers evaluating the sincerity of an employee's claimed religious belief may consider "whether the timing of the request renders it suspect," for example, when the religious exemption request "follows an earlier request by the employee for the same benefit for secular reasons." Dkt No. 25, Ex. 22, p. 13. That is exactly what occurred in this matter and the timing of Plaintiff's request does render it "suspect."

Defendant also argues that Plaintiff's religious beliefs developed only shortly before she lodged her request for a religious exemption, and that she had not been religious her entire life. Specifically, Defendant asserts that Plaintiff only developed her religious beliefs regarding vaccination between November 7 and November 9, 2017, and then submitted her religious exemption request on November 9, 2017. Plaintiff disputes

this timeline and argues that her religious beliefs opposing vaccination began to evolve in the spring of 2017.

Obviously, an employee's long-standing religious practice is much less likely to be disingenuous than if the employee only adopted the religious belief a short time before requesting an accommodation. *See Hansard v. Johns-Manville Prods. Corp.,* 1973 WL 129 at *2 (E.D. Tex. Feb. 16, 1973). In this case, most of the evidence points to the fact that Plaintiff's alleged religious objection to vaccination developed shortly before her exemption request was submitted. Plaintiff's argument that her beliefs began to evolve in the spring of 2017 as a "natural progression from medical to religious" is unpersuasive, as she testified that she began researching vaccines in April of 2017 "from a medical perspective," not from a religious perspective. Further, Defendant presents multiple examples of Plaintiff's testimony that her "natural progression" from medical to religious-based concerns with the flu vaccine took place between November 7 and November 9, 2017. Dkt No. 25, Ex. 1, pp. 88, 104, 146, 232-233, 236, 319.  The weight of the evidence presented in this matter does not support Plaintiff's claim that her religious objection to vaccination occurred in the spring of 2017. Rather, her claimed religious objection to vaccination occurred within a few days of her submitting a request for a religious exemption. Accordingly, I find the timing of Plaintiff's development of religious issues with vaccination to be suspicious and find that this timing points to a lack of sincerity in her religious beliefs.

Further, upon learning that she would be required to undergo vaccination, Plaintiff consulted a secular, antivaccination Facebook group whose members encouraged her to submit a religion-based exemption request, despite having no knowledge of Plaintiff's

10

religious beliefs. Members of this group also encouraged Plaintiff to resort to fraud, if necessary, to obtain an exemption. The EEOC has indicated that an employer may deny a religious accommodation request if the employer "has reason to believe the accommodation is not sought for religious reasons." Dkt No. 25, Ex. 22, at p. 13. Clearly, Plaintiff's consultation of this non-religious group and the urging of its members to seek a religious exemption despite lacking all knowledge of Plaintiff's religious beliefs does not lead to the conclusion that Plaintiff requested an accommodation for religious reasons. This is further evidence of a lack of sincerity underlying Plaintiff's request for a religious exemption.

In addition, it is undisputed that Plaintiff did not request a religious exemption until almost seven weeks after the deadline for submitting such an exemption had expired, and that she failed to provide the required certification from a third party attesting to the sincerity of her religious beliefs at the time she submitted the request. These actions were in clear violation of Defendant's policy addressing exemption requests.

It is also noteworthy that beginning in 2007, Plaintiff refused voluntary influenza vaccination even though she admits she had no religious opposition to it at that time. Dkt No. 25, Ex. 1, Pl's dep, pp. 257-258. She continued to refuse the flu vaccine every year from 2007 until 2012, when Defendant made it mandatory. *Id.* at pp. 256-258. Further, she requested no religious-based exemptions from Defendant's vaccination requirement between 2012 and 2017, the first five years that Defendant's mandatory vaccine policy was in place.

There is no dispute that Plaintiff had routinely undergone vaccination for many years after Defendant made it mandatory prior to submitting her exemption request. It is

also undisputed that Plaintiff had multiple tattoos and piercings, and Defendant alleges that these things do not align with Plaintiff's claim that the Bible compelled her to keep her blood "pure under all circumstances and free from contaminates." As the EEOC permits an employer to consider "whether the employee has behaved in a manner markedly inconsistent with the professed belief" in evaluating the employee's sincerity, Dkt No. 25, Ex. 22, at p. 13, I find this evidence also does not support the sincerity of Plaintiff's claimed religious beliefs.

This evidence leads to the inescapable conclusion that Plaintiff did not hold a sincerely-held religious belief opposing vaccination. Rather, Plaintiff had a medical objection to vaccination and claimed a religious-based objection in an attempt to circumvent Defendant's mandatory vaccination policy.

In response to this evidence regarding the lack of sincerity of her religious beliefs, Plaintiff points to a letter authored by Pastor Mike Anderson of the Refton Brethren in Christ Church as evidence of her alleged sincere religious objection to vaccination. Dkt No. 25, Ex. 24. In that letter, Pastor Anderson indicated that Plaintiff attends his church, and that in his opinion, she harbors a sincere religious objection to the flu vaccine. *Id*. However, Pastor Anderson did not compose the letter until several weeks after Plaintiff's employment with Defendant had ended, and Defendant was not in possession of the letter when evaluating the sincerity of Plaintiff's claimed religious objection. Further, Pastor Anderson stated that "[s]ome Christians feel very strongly that vaccines, including the flu vaccinations, are wrong and go against their sincerely held religious beliefs," but he did not state that members of the Brethren in Christ Church object to flu vaccination. Dkt No. 25, Ex. 24. In fact, the United States Brethren in Christ Church does not require or advise

12

its congregants to forgo vaccination. Dkt No. 25, Ex. 13. In addition, although his letter stated that Plaintiff attends his church, Pastor Anderson admitted during his deposition that she only attended sporadically, and she never underwent the church's membership covenant process. Dkt No. 25, Ex. 21, Anderson dep., pp. 14-15, 75-76. Plaintiff had never discussed her spiritual beliefs with Pastor Anderson before she asked him to write the letter for her. *Id.* at pp. 50, 52. I find Pastor Anderson's letter is insufficient evidence for Plaintiff to meet her burden of proving a *prima facie* case of discrimination.

Dkt No. 25, Ex. 1, pp. 313-314. In response, Defendant presents

Based on the record before the Court, no reasonable jury could find that Plaintiff had a sincerely held religious objection to the influenza vaccine. Accordingly, Plaintiff cannot meet her burden and make out a *prima facie* case of discrimination. Therefore, her claim must be dismissed.

### 2. Undue Hardship

Even if Plaintiff could establish a sincerely held religious belief, her claim would still fail, as Defendant would suffer undue hardship if Plaintiff were permitted to forgo vaccination. Title VII "does not require covered employers to accommodate an employee's chosen religious observances in any and all circumstances." *Prise v. Alderwoods Group, Inc.*, 657 F. Supp.2d 564, 600 (W.D. Pa. 2009). Instead, an employer may deny a requested accommodation that would impose "an undue burden on the employer's operations." 42 U.S.C. § 2000e(j). An undue burden occurs if the proposed accommodation would impose more than a *de minimis* imposition on the employer's operations. *See Trans World Airlines v. Hardison*, 432 U.S. 63, 84 (1977) (holding that an undue burden occurs when the employer is required to assume more than a "*de*

*minimis* cost"). As the Third Circuit has held, it "is not difficult" for an employer to establish undue burden. *Webb v. City of Philadelphia*, 562 F.3d 256, 260 (3d Cir. 2009).

In examining undue hardship, courts evaluate both economic and non-economic costs. *Id.* at 259-60. "[E]mployers must be given leeway to plan their business operations and possible accommodative options in advance, relying on an accommodation's predictable consequences along the way." *EEOC v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 317 (4th Cir. 2008). Moreover, an employer is not required to grant a proposed accommodation that "would 'either cause or increase safety risks or the risk of legal liability for the employer.'" *Robinson v. Children's Hosp. Boston*, 2016 WL 1337255 (D. Mass. April 5, 2016).

In this matter, Defendant argues that granting Plaintiff's religious-based exemption request would have undermined its patient and employee health efforts, resulting in an undue burden. In response, Plaintiff first argues that Defendant had already granted numerous exemptions to its vaccine policy, and that granting an additional exemption would not have resulted in an undue burden. Plaintiff also argues that employees of Defendant who are approved for a medical or religious exemption are permitted to wear a mask in lieu of vaccination and therefore, it would not be an undue burden if she were permitted to wear a mask as an accommodation.

In support of its position, Defendant presented an opinion from Dr. Daniel Salmon, an expert on vaccination effectiveness. Dr. Salmon opined that providing non-medical exemptions to mandatory vaccination programs for healthcare workers increases the risk that vaccine-preventable disease will spread. *See* Salmon report, Dkt No. 25, Ex. 2. He

14

also opined that use of surgical masks is less effective at preventing the spread of influenza in healthcare facilities than vaccination. *Id.*

It is undisputed that Defendant had granted 81 medical-based and 24 religious-based exemptions to employees (JSOF at ¶¶ 21-22) thus increasing the population of unvaccinated individuals in danger of contracting and spreading influenza throughout the health system. Plaintiff argues that since Defendant had already granted numerous exemptions, it would not result in an undue burden to provide one additional exemption to her.

However, it is important to note that while Dr. Salmon did acknowledge that *medical* exemptions to mandatory influenza vaccination must be granted, he did not state that *non-medical* exemptions must be granted. To the contrary, Dr. Salmon found that the granting of non-medical exemptions significantly raises the danger that influenza will spread. *See* Docket No. 25, Ex. 2. Any exemption, for whatever reason granted, weakens Defendant's ability to protect patients from influenza, and Plaintiff presents no evidence to the contrary. Clearly, some employees should not undergo vaccination due to medical complications and must be exempt from the vaccine requirement. However, contrary to Plaintiff's argument, these necessary medical exemptions make it even more important for Defendant to limit the number of additional exemptions to only those individuals who demonstrate an actual established right to an religious exemption. If exemptions are extended to employees who have not demonstrated a legal right to exemption, that could weaken immunity amongst Defendant's employees as a group, which in turn can lead to the spread of influenza at Defendant's facilities. Granting Plaintiff's religious exemption request, therefore, even though 24 such requests had already been granted, "could have

15

put the health of vulnerable patients at risk," with the potential for increased hospitalization and death as result. *Robinson*, 2016 WL 1337255 at *10 (granting summary judgment for hospital that refused religious exemption to influenza vaccine). This would result in an undue burden to Defendant. *See Together Employees v. Mass General Brigham Inc.*, 2021 WL 5234394 (D. Mass. Nov. 12, 2021) (finding that permitting plaintiffs who were unvaccinated against COVID-19 to continue working at Defendant hospital without being vaccinated would "materially increase the risk of spreading the disease and undermine public trust and confidence in the safety of its facilities," which would result in an undue burden under both the ADA and Title VII); *see also Does 1-6 v. Mills*, 15 F.4th 20, 35-36 (1st Cir. Oct. 19, 2021) (evaluating the likelihood of success on the merits in the context of a preliminary injunction and concluding that "hospitals need not provide [a COVID-19 vaccination] exemption . . . because doing so would cause them to suffer undue hardship"). As stated by Dr. Salmon:

> Exemptions granted for medical purposes and those granted for non-medical reasons involve different risk-benefit analyses. Obviously, an unvaccinated healthcare worker poses the same risk of acquiring and transmitting influenza regardless of whether she is exempted from mandatory vaccination on medical grounds or non-medical grounds. But when such an employee is granted an exemption on medical grounds, the benefits of allowing the employee to forgo vaccination in order to avoid adverse effects that such an employee would experience by undergoing influenza vaccination outweigh the potential risk such an employee poses when unvaccinated. The same, however, cannot be said when employees are provided with exemptions on non-medical grounds, such as for religious reasons. There is no corresponding medical benefit associated with granting exemptions for non-medical reasons.

Docket No. 31, Ex. 3. Every single additional unvaccinated employee to whom patients are exposed adds to the risk to those patients. Accordingly, Plaintiff's argument that there would be no harm in granting her one additional exemption is unpersuasive.

Plaintiff also argues that it would not have been burdensome for Defendant to permit her to wear a mask in lieu of vaccination. As discussed above, vaccination poses a serious health threat to some of Defendant's employees. Those employees are justifiably excused from the vaccination requirement and permitted to wear a mask instead, as the direct threat to their health outweighs the benefit to overall patient safety that could result from them undergoing vaccination. Mask use provides some protection from influenza for those employees, even though that protection level falls short of what vaccination would provide. Docket No. 25, Ex. 3, p. 8. However, each unvaccinated employee permitted to wear a mask increases the risk of influenza transmission to vulnerable patients. *See* Salmon affidavit, Docket No. 31, Ex. 2. The fact that other employees have been permitted to wear a mask instead of undergoing vaccination increases the danger posed by an additional employee such as Plaintiff receiving an exemption and being permitted to wear a mask. That danger would result in an undue burden to Defendant.

Defendant has provided evidence that it would have been more dangerous to allow Plaintiff to wear a mask than it would have been to require that she undergo vaccination. Plaintiff has presented no evidence to refute that fact. Therefore, even if Plaintiff did have a sincerely-held religious objection to vaccination, her claim of discrimination still must fail because Defendant has demonstrated undue hardship. Accordingly, summary judgment in favor of Defendant is warranted because there can be no dispute that allowing Plaintiff to wear a mask in lieu of undergoing vaccination would have caused more than a *de minimis* negative effect on Defendant's patient and workplace safety efforts. *See Robinson v. Children's Hosp. Boston*, 2016 WL 1337255 at

*10 (granting summary judgment to employer who refused to permit employee involved in direct patient care to wear a mask in lieu of undergoing influenza vaccination).[1]

## V. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is granted and Plaintiff's Amended Complaint is dismissed. An appropriate order follows.

---

[1] Defendant also argues Plaintiff's claim is time-barred, but as I am granting Defendant's motion for summary judgment on other grounds, I do not reach that argument.